UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

UNITED STATES OF AMERICA

        vs.                Case no. 5:16-CR-70 (BKS)

DANIEL BEAL
        Defendant.

-------------------------------------------------------------------

DECLARATION IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

Daniel Beal hereby declares that the following is true and correct under penalty of perjury pursuant to 28 USC § 1746:

1. I am the Defendant in the above matter, and I make this declaration in support of my motion to suppress evidence as set forth in the submissions of my attorney, George F. Hildebrandt, Esq. My attorney, who is preparing this with me, has told me that given the limited purpose of this declaration, not every fact known by me or which may ultimately prove relevant to the Court's decision of the motions will be set forth in this document.

2. On the morning of July 29, 2015, I was at my business, Dacobe Enterprises, in Utica, New York. Two individuals walked in and began to speak to my business partner, Geoff Thorp. They all went to the showroom area of our business, where they met for about ten minutes.

3. Geoff then came out and brought me into the room. The two people identified themselves as FBI agents. I have seen an FBI report, which revealed their identities as Agents Heather Weber and Robert A. Lyons, Jr. The agents said that they had a search warrant and that they were looking for child pornography. As the agents indicate in their report, I stated something to the effect

1

that I knew why they were there.  I asked Geoff to excuse us, and he left. I remained in the room with the two agents, who questioned me for close to the next two hours.

      4.      Since being arrested, I have seen FBI reports which assert that I was brought into the room with the agents at 11 a.m. on July 29; told I was under arrest at 12:45 p.m.; and that questioning stopped at 12:47 p.m.  after I advised agents that I did not want to answer any further questions. I do not recall the precise times involved, but those times would seem to be relatively accurate.

      5.      I was also provided an audio recording of a part of my interrogation, which the government provided to my lawyer.  The recording, apparently made by Agent Weber, was made without my knowledge.  The recording was started after I had been brought into the room and questioning had begun. Agent Weber went in and out of the room during the interrogation, so I assume that she started the recording on one of the occasions when she stepped out. Agent Weber announces at the beginning of the recording that the time is then 11:23 a.m.  I have listened to the recording, and it generally reflects, to the best of my recollection, what was said in the room during the time the interrogation was started.

      6.      At no time during the unrecorded portion of my interrogation was I advised of my "Miranda" rights, nor is there any claim in the FBI reports that I was advised of them during this time. The recording reflects that I was not advised of my Miranda rights until approximately one hour and eighteen minutes into the recording (*i.e.*, as the recording started 23 minutes into the interrogation started, about one hour and forty-one minutes after the interrogation began, or approximately 12:41 p.m.).  Shortly after being advised of my rights, I told the agents that I wanted to speak to an attorney before speaking to them further.  That was the first time I was advised of my rights, and that dialogue clearly appears on the recording. I will defer to the actual recording and my attorney's recitation of what is heard.

7. During the time I was being interrogated, I felt like I was not free to leave. There are many reasons why I felt this way – many of them are apparent from the recording and my attorney is commenting on them. Among the reasons is that these were federal law enforcement agents, and they told me when I first encountered them that they were executing a search warrant and were looking for child pornography. I had indicated to them that I was the one they were looking for. Moreover, I was kept in the room for nearly two hours. During this time, I was expressing that I was waiting to hear from my son, who was supposed to come to the business that morning so that I could drive him home after summer school and then return with our car. I repeatedly expressed my concern about whether he was outside or had texted me, and wanted to leave the room to see if he had come and to check my phone - which agents had and was not in the room with me - to see if he had texted. The recording reflects that they did not permit me to do either. The recording also reflects my and the agents' comments about whether I was going to be leaving in handcuffs; their remarks that they had questions that they "needed to ask" me because they had a job to do; and that they had me view and initial photographs. The recording also reflects that several times they asked me if I needed to go to the bathroom, which clearly indicated that I was not free to leave to use the restroom of my own volition, and needed their permission. There are other indicators of the restriction of my freedom that appear on the recording, which speaks for itself in many respects, and I believe it is clear that neither I, nor any reasonable person in my situation, would have felt free to leave during my interrogation.

Dated: April 7, 2016

/s/ Daniel Beal

Daniel Beal