IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************************

UNITED STATES OF AMERICA,

     v.                                       Crim. No.:  5:16-CR-70 (BKS)

DANIEL BEAL,
                  Defendant.

*******************************************

## <u>UNITED STATES' RESPONSE TO DEFENDANT'S<br>MOTION TO SUPPRESS EVIDENCE</u>

Dated:    May 2, 2016                            Respectfully submitted,

                                              RICHARD S. HARTUNIAN
                                              United States Attorney

                                              <u>*/s/ Geoffrey J.L. Brown*</u>
                        By:    Geoffrey Brown
                                     Assistant U.S. Attorney

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 2

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ............................................................................................................................. 8

   A.   THE COURT SHOULD NOT SUPPRESS EVIDENCE OF CHILD PORNOGRAPHY
        FOUND ON THE DEFENDANT'S COMPUTERS AND ELECTRONIC DEVICES ..... 8

     1.   The Warrant Authorized the Search the Defendant's Computers and Electronic
         Devices with Sufficient Particularity .......................................................................... 9

     2.   Agents Did Not Exceed the Scope of the Warrant by Searching the Defendant's
         Computers and Electronic Devices ............................................................................ 12

     3.   Even If the Child Pornography Evidence Were Obtained in Violation of the Fourth
         Amendment, Suppression Would Not Be an Appropriate Remedy .......................... 15

   B.   THE COURT SHOULD NOT SUPPRESS THE STATEMENTS MADE BY THE
        DEFENDANT TO AGENTS WEBER AND LYONS ................................................... 16

CONCLUSION ....................................................................................................................... 24

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law and supporting affidavit in opposition to the Defendant's Omnibus Pretrial Motion to suppress the physical evidence seized during the execution of a federal search warrant at his place of business and the statements he made to law enforcement officers during the course of that search.

In his "omnibus" pretrial motion, the defendant first moves to suppress evidence of child pornography that was found on computers and electronic devices found at his workplace.  He argues that the warrant authorizing the search of these devices was insufficiently particular and that the Federal Bureau of Investigation (FBI) agents who executed the warrant exceeded its scope. *See* Def.'s Mem. in Support of Def.'s Omnibus Pretrial Mots. at 3 [hereinafter Def.'s Mem.].  Additionally, the defendant seeks to suppress statements he made to FBI agents during a voluntary interview, on the grounds that he was not read his *Miranda* rights before the interview. *Id.* at 5.  As explained in more detail below, the defendant's arguments are without merit and should be denied.

The search warrant signed by Judge Andrew T. Baxter on July 21, 2015, specifically authorized the search and seizure of all computers and electronic hardware evidencing violations of Title 18, United States Code, Section 2252A.  During the course of the execution of the search warrant FBI agents complied with all aspects of the search warrant which clearly authorized the search of the computers and electronic storage media located at the business premises.  Similarly, the statements made by the defendant should not be suppressed for lack of a Miranda warning because the defendant was not subjected to a custodial interrogation at the time he made the statements at issue.  The interview was conducted at the defendant's place of business in a location of the defendant's business partner's choosing.  The defendant voluntarily participated

in the interview at the suggestion of his business partner. The room was not locked or the entrance to it impeded in any way. At no time during the course of the interview was the defendant ever restrained or told he could not leave. The agents who questioned the defendant did not draw or even display their weapons at any time. Finally, the entire interview was conducted in a conversational tone with no threats or coercion being applied by the agents. Under these circumstances Miranda warnings were not required to be administered by the agents.

**FACTUAL BACKGROUND**

Between September 2014 and July 2015, undercover agents at the FBI's Buffalo Field Office downloaded images and videos of child pornography from a computer using the Internet Protocol (IP) address 64.65.206.37. *See* Def.'s Ex. A pp. 1-29 (Search Warrant/Addendum/Application/Affidavit) at 10–11.[1] The files were downloaded using Ares, a software program that connects users to a peer-to-peer file-sharing network. *Id.* at 7. Peer-to-peer file-sharing allows a user to download a single file from multiple computers simultaneously, which increases the speed with which the file can be downloaded. *Id.* at 6-7. When a user accesses a peer-to-peer network, however, his IP address—a unique numerical identifier assigned to any computer that connects to the internet—is visible to FBI investigators, who use a modified version of the Ares software to access the network and download files from specific computers. *Id.* at 9-10. Thus, in this case, agents were able to download a total of six images and videos of child pornography from a computer using IP address 64.65.206.37 on three separate occasions. *Id.* at 10-11 (describing the downloaded images and videos as containing, among other things, "a prepubescent female being vaginally penetrated by an adult male," a

---

[1] A Copy of this document is attached hereto at Exhibit 1.

"naked prepubescent female lying on her back, with a naked prepubescent boy between her legs," and "a nude prepubescent female masturbating"). *Id.* at 11-12.

Agents in the Buffalo Field Office subpoenaed records related to the target IP address from Earthlink, the internet service provider responsible for the address. *Id.* at 12. They determined that the address was registered to Dacobe Enterprises, a woodworking and acrylic business located in Utica, New York. *Id.*

On July 21, 2015, Special Agent Heather Weber applied for a federal search warrant to search Dacobe Enterprises.   Agent Weber's affidavit which **was attached to the Search Warrant** specifically requested authority to search "the SUBJECT PREMISES and any computers, computer equipment, or computer storage media and electronic storage media located during the search, for the items listed in Attachment B." *Id.* at 20.

Magistrate Judge Baxter approved the warrant and attached his own Addendum to it which he specifically referenced and initialed on the face of the warrant.   *Id.* at 1-2.   That addendum specifically references the authority being granted to search computers at the premises identified in the warrant.   The first and second paragraphs of the Addendum States in relevant part:

1.  **Minimization**.  In executing the search of any computer or computer related items authorized by this warrant, the law enforcement officers executing the search… shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.  **Completion of Computer Search**.  The United States shall make an exact copy of all data and other electronically stored information from any seized data storage devices with 30 days after the warrant is executed unless, upon a showing of good cause, such date is extended by order of this Court or any other court of competent jurisdiction. *See* Def.'s Ex. A at 2.

Attachment B which refers to Items to be Seized and is specifically referenced on the face of the search warrant states in paragraph 1 under the heading "Computers and Electronic Media" that:

> 1. The authorization includes the search of electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and computer media will be conducted in accordance with the affidavit submitted in support of this warrant.
> *Id.* at 22.

Special Agents Heather Weber and Robert Lyons, Jr. as well as additional law enforcement personnel executed the warrant at Dacobe Enterprises on July 29, 2015. At the time the warrant was executed on Dacobe Enterprises no specific target had been identified. SA Robert Lyons, Jr. Declaration at 4.[2] Rather agents were aware that an individual had accessed and down loaded child pornography at that location but were unaware if it was a current or former employee, a customer, or some other guest. *Id.* When they arrived at Dacobe Enterprises, agents Lyons and Weber first spoke with Geoffrey Thorp, who co-owns the business with the defendant. *Id.* at 5. The agents identified themselves as federal law enforcement agents and advised Thorp of the purpose of their visit. *Id.* at 5-6. Thorpe led the agents into a showroom area adjacent to the main office, where he and the agents discussed the purpose of their visit. *Id.* After discussing the nature of their visit with Mr. Thorp for approximately 30 minutes Mr. Thorp told the agents that he would like to include his business partner, the defendant, in the discussion. *Id.* at 6. The agents agreed that that would be appropriate and Thorp left the showroom unescorted and returned a short time later with the defendant. *Id.*

When Thorp returned with the defendant, the defendant sat in the chair that Thorp had been occupying. *Id. at 7.* The defendant was not searched or directed to sit in a particular

---

[2]   A copy of the affidavit is attached hereto as Exhibit 2.

location. *Id.* The agents informed the defendant of their identities and the purpose of their visit. *Id*. The defendant replied that he knew why the FBI was at his place of business and stated that he wished to cooperate in the investigation. *Id*. The defendant then asked Mr. Thorp to leave the room so that he and the agents could speak privately. *Id*.

The interview location was a large open area showroom with two café style push door that did not contain any outward handles or locks. *Id*. at 12. The interview location was accessible by other Dacobe Enterprises employees and was not secured by FBI Special Agents standing guard outside or inside the interview location. *Id*. No other FBI Special Agents or law enforcement officers were present inside the interview location during Mr. Beal's interview. *Id*. When Mr. Beal entered the interview location, he did not question the location of the interview and he did not request to change or move the interview to another location at Dacobe Enterprises or elsewhere. *Id*.

At the outset of the interview Mr. Beal immediately confessed to downloading images and videos of child pornography. *Id.* at ¶8. The defendant explained to agents that he used a family owned computer that contained the peer-to-peer software, Ares, that he had transported to Dacobe Enterprises and connected to the company's network. *Id*. In addition, the defendant made several other admissions regarding how he used the Ares software to search for images and videos of child pornography, the nature and frequency of his viewing of child and adult pornography, and the methods he used for storing and cataloging his collection of image and video files of child pornography on his computer's hard drive. *Id*. At a later point during the interview the agents asked the defendant to initial and date images of child pornography that were previously downloaded from his computer by an undercover agent to indicate that the

6

defendant had in fact personally downloaded them. *Id*. The defendant agreed and after reviewing the images signed them indicating that he had downloaded the images. *Id*.

The agents made no promises or threats or force to induce the defendant to speak with them. *Id*. at 11. The entire interview was conducted in a friendly conversational tone in which the defendant was an active participant. *Id*. The agents did not utilize any confrontational, coercive, or threatening language or behavior with the defendant during the course of the interview. *Id*. While the interview was approximately one hour and forty five minutes in length, this was due in large part to the conversational nature of the interview and how detailed the responses were that the defendant gave to the agents. *Id*. at 13.

Throughout the entirety of the interview with Mr. Beal, the Special Agents were dressed in business casual clothing with no outward FBI or law enforcement markings displayed. *Id*. at 14. Although the agents were armed with FBI issued firearms, they remained secured inside their hip holsters and concealed from Mr. Beal's viewpoint at all times. *Id*.

Mr. Beal never asked to stop the interview or leave the interview location at all for any reason during the course of the interview. *Id*. at 13-14. In fact, when Agent Lyons suggested he take a bathroom break the defendant declined the invitation. *Id*. at 13. At one point during the interview the defendant indicated that he wanted his son to know that he was busy in a meeting but did not ask that he be allowed to convey the message directly to him or state that he wished to leave the interview to tell his son face to face. *Id*. at 15. The agents discussed having one of them let his son know he was busy and he agreed to this course of action. *Id*. at 15.

While the defendant did ask if he could check his text messages to see if his son was in fact waiting in the parking lot for him the agents pointed out that his cellular phone was part of the search warrant and was subject to processing as part of the search. *Id*. At no point did he ask

to terminate or suspend the interview or leave the show room to check on the whereabouts of his adult son.  *Id*. at 13-14.

About ninety minutes into the interview, after the defendant had confessed, child pornography had been located on devices owned by the defendant, and the defendant had signed off on images of child pornography that he had downloaded, the FBI sought and received authority from the United States Attorney's office to arrest the defendant.  *Id*. at 9.  At that point, the defendant was placed under arrest, and read his *Miranda* rights.  *Id*.  Although the defendant initially was unclear as to whether or not he wished to continue the interview he shortly thereafter stated that he wanted an attorney and the interview was stopped and he was then taken into custody.  *Id*.

## ARGUMENT

### A.  THE COURT SHOULD NOT SUPPRESS EVIDENCE OF CHILD PORNOGRAPHY FOUND ON THE DEFENDANT'S COMPUTERS AND ELECTRONIC DEVICES

The defendant offers two reasons to suppressing the child pornography that agents found on his computers and electronic devices.  First, he argues that although the search warrant here authorized the *seizure* of the defendant's computers and electronic devices, it was insufficiently particular to authorize the *search* of those materials.  *See* Def.'s Mem. in Support of Def.'s Omnibus Pretrial Mots. at 3 [hereinafter Def.'s Mem.].  Second, the defendant argues that because nothing "in plain view" at the time of the search indicated that the defendant's computers and electronic devices had been used to access child pornography, they did not "evidence" violations of child pornography laws as required by the warrant. *Id.* at 4.

These arguments are without merit, and should be dismissed.  Moreover, even if the child pornography evidence were obtained in violation of the Fourth Amendment, the court should nonetheless admit it, because it was seized in good faith reliance on a facially valid warrant.

### 1. The Warrant Authorized the Search the Defendant's Computers and Electronic Devices with Sufficient Particularity

Under the Fourth Amendment, a search warrant is valid only if it "particularly describ[es] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  This "particularity requirement" serves not only to notify a suspect of the limitations on an officer's lawful authority to search, *see Groh v. Ramirez*, 540 U.S. 551, 561 (2004), but it also "protects against wide-ranging exploratory searches unsupported by probable cause." *United States v. Rosa*, 626 F.3d 56, 61 (2d Cir. 2010) (internal citations and quotation marks omitted).

A warrant is sufficiently particularized if it meets three requirements: (1) the warrant must "identify the specific offense" under investigation, (2) it must "describe the place to be searched," and (3) it must "specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) *Id.* at 45-46 (internal citations and quotation marks omitted).  Generally, these requirements are met if "the executing officer [can] ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992).  Thus, courts should not apply "[t]echnical requirements of elaborate specificity" in evaluating a warrant, but rather should read it "in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *but see Groh*, 540 U.S. at 557–58 (refusing to consider information in an officer's warrant application and affidavit where "the warrant did not incorporate [the] documents by reference, nor did [they] accompany the warrant").

Here, the defendant does not dispute that the warrant met the first and third prongs of the Fourth Amendment's particularity requirement. *See* Warrant at 19 (limiting search to "items evidencing violations of [28 U.S.C. § 2252A,]" which prohibits "knowingly possessing . . . child pornography"); Def.'s Mot. at 3 (admitting that the warrant authorized the seizure of the defendant's computers). Rather, he claims that because the warrant lists computers and other electronic devices in Attachment B, entitled "Things to be Seized," rather than Attachment A, entitled "Places to be Searched," the warrant "does not . . . authorize the *search* of these devices" with sufficient particularity. Def.'s Mem. at 3 (emphasis in original).

This argument is baseless and conveniently ignores the fact that Judge Baxter attached his own Addendum to the Search Warrant that he specifically referenced and initialed on the face of the warrant.  *Id.* at 1-2. That addendum states the authority being granted is to search computers at the premises identified in the warrant.  The first and second paragraphs of the Addendum state in relevant part:

1.  **Minimization**.  In executing the search of any computer or computer related items authorized by this warrant, the law enforcement officers executing the search… shall make reasonable efforts to utilize computer search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2.  **Completion of Computer Search**.  The United States shall make an exact copy of all data and other electronically stored information from any seized data storage devices with 30 days after the warrant is executed unless, upon a showing of good cause, such date is extended by order of this Court or any other court of competent jurisdiction. *See* Def.'s Ex. A at 2.

Furthermore, the Defendant's reading ignores virtually all of the language in Attachment B aside from its title.  On its very first page, for example, Attachment B refers to "the seizure *and search* of computers and computer media." Def.'s Ex. A at 22. (emphasis added). Moreover, Attachment B authorizes the search of "any computer or electronic records,

documents, and materials . . . including, but not limited to . . . any information on any electronic or magnetic storage device." *Id.* at 24.  Thus, even if the defendant were correct that the warrant did not authorize the search of "computers and computer media" found at the defendant's business, it plainly authorizes the search of any "electronic data" stored on those computers and computer media. *Id.* at 22.

Finally, Agent Weber's affidavit which **was attached to the Search Warrant** specifically requested authority to search "the SUBJECT PREMISES and any computers, computer equipment, or computer storage media and electronic storage media located during the search, for the items listed in Attachment B." *Id.* at 20.

Thus, the warrant was sufficiently specific to allow an agent to "ascertain . . . with reasonable certainty" that she was authorized not only to seize the defendant's electronic devices, but also to search them, the warrant met the Fourth Amendment's particularity requirement. *See United States v. Coye*, No. 02-CR-732, 2002 WL 31526542, at *4 (E.D.N.Y. Nov. 14, 2002) (upholding a computer search warrant that "list[ed] 'computer disks, disk drives, data disks, and magnetic media floppy disks' among the *items to be seized*") (emphasis added) (original alterations and citations omitted); *see also United States v. Rousseau*, 628 F. App'x 1022, 1027 (11th Cir. 2015) (upholding a warrant that "did not identify . . . a particular computer or cell phone" at a fire station where investigators knew that child pornography had been accessed, because it was "as specific as the circumstances and nature of the activity being investigated would permit.").  The defendant's argument to the contrary places a strained emphasis on the title of Attachment B, and in so doing fails to construe the warrant "in a commonsense and realistic fashion." *Ventresca*, 380 U.S. at 108.

### 2.  Agents Did Not Exceed the Scope of the Warrant by Searching the Defendant's Computers and Electronic Devices

The defendant also argues that the agents who searched his electronic devices exceeded the scope of the search warrant. *See* Def.'s Motion at 4.  Because the warrant only authorized the search and seizure of computers and electronic devices "evidencing" violations of federal child pornography laws, the defendant argues, and that because nothing "in plain view" at the time of the search suggested that his devices contained child pornography, the devices seized by the agents did not "evidence" violations and thus did not fall within the scope of the warrant. Def.'s Mot. at 4.  But the defendant proposes an implausible and unduly restrictive interpretation of the phrase "evidencing a violation of [18 U.S.C. § 2252A]."  The Court should therefore reject the defendant's interpretation and refuse to suppress the child pornography evidence here.

The first prong of the Fourth Amendment's particularity requirement requires that a warrant "link the items to be searched and seized to the suspected criminal activity." *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (holding that a search of computer data "lacked meaningful parameters" because the warrant authorizing it had failed to identify the crime being investigated); *see also Galpin*, 720 F.3d at 447–48 (holding that a warrant was invalid "insofar as [it] generally authorized officers to search [the defendant's] electronic equipment for evidence of violations of 'NYS Penal Law and or Federal Statutes'").  By precluding officers from searching or seizing items that are plainly not connected to the crimes under investigation, this prong "protect[s] against wide-ranging exploratory searches unsupported by probable cause." *Id.* at 61; *see also id.* at 62 (approving hypothetically of a warrant that covered "any and all electronic equipment potentially used in connection with the production or storage of child pornography and any and all digital files and images relating to child pornography contained therein")

As the defendant admits, the phrase here limiting the scope of the search to "[i]tems evidencing a violation of [18 U.S.C. § 2252A]" was designed to ensure the warrant's compliance with the Fourth Amendment's particularity requirement. *See* Def.'s Mot. at 4 ("Such a limitation was necessary to meet the requirements of the particularity clause.").  The defendant nonetheless implicitly proposes that the Court interpret the phrase expansively—far beyond what Fourth Amendment particularity would require.  He argues that an item only "evidenced" a child pornography violation within the meaning of the warrant if agents were able to ascertain, at the time of the search, some indication in "plain view" that the item was "tied to the receipt, distribution or possession of child pornography." Def.'s Mot. at 4. This implausible interpretation of the clause should be rejected for several reasons.

First, and perhaps most obviously, the standard proposed by the defendant is unworkable in the context of a computer search. Virtually no computer exhibits external, immediately apparent indicators of its contents or prior uses. Thus, if the word "evidencing" in the phrase "evidencing violations of [18 U.S.C. § 2252A]" were understood to mean "exhibit external indicators of," then the phrase would eviscerate the remainder of the warrant, which carefully incorporates various types of computer hardware, software, and electronic media into its search-and-seizure authorization. *See* Def.'s Ex. A at 22–25.  The defendant offers no persuasive reason to read the warrant in such a restrictive and self-contradictory fashion.

Moreover, the standard proposed by the defendant is higher than the Fourth Amendment's standard for whether a warrant should issue in the first place.  To issue a search warrant, a magistrate need only ascertain "*probable cause* . . . to believe that the evidence sought will aid in a particular arrest or conviction." *Warden v. Hayden*, 387 U.S. 294, 307 (1967) (emphasis added).  The defendant's additional-plain-view-indicators standard is clearly more

burdensome than probable cause. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (probable cause merely requires "a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). The defendant offers no reason that "evidencing a violation of [18 U.S.C. § 2252A]" should be read so as to paradoxically require more evidence to *execute* a warrant than was required to *issue* the warrant in the first place. The Fourth Amendment does not require additional plain-view indicators of criminality, and there is no reason to read such a requirement into the text of the warrant here.

Thus, the proper standard for determining whether the computers and electronic devices here "evidenced" a violation of 18 U.S.C. § 2252A is not whether they exhibited external, plain-view indications that they contained child pornography, but rather whether the agents executing the warrant had probable cause to believe that they did. *Cf. United States v. Phan*, 628 F. Supp. 2d 562, 572 (M.D. Pa. 2009) (holding that documents "did not evidence" involvement in a marriage fraud scheme, because the documents were in Vietnamese and the officers did not ask an on-site interpreter to review the documents before seizing them). And the evidence gathered by agents before the search of Dacobe Enterprises, combined with the defendant's admissions during his interview, clearly supported an affirmative probable-cause determination. Agent Weber had reviewed images and videos of child pornography that had been downloaded on three separate occasions from a computer using an IP address that was registered to the defendant's business *See* Def.'s Ex. A at 10-12 (Affadavit of Agent Weber 7–9). Moreover, the defendant immediately admitted to having accessed child pornography using Dacobe Enterprises' internet connection, *see* Decl. of Daniel Beal ¶ 7. Under a proper construction of the warrant, therefore, the seized devices "evidenced" violations of the child pornography statutes, and were properly

seized under the warrant. Consequently, the Court should deny the defendant's motion to suppress the child pornography evidence found on the devices.

### 3. Even If the Child Pornography Evidence Were Obtained in Violation of the Fourth Amendment, Suppression Would Not Be an Appropriate Remedy

Finally, even if the search and seizure of the defendant's computers and electronic devices did violate the Fourth Amendment, suppression would not be an appropriate remedy, because the Agents acted in "good-faith reliance" on the warrant. *See United States v. Leon*, 468 U.S. 897 (1984).

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Id.* at 906. Rather, its exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* Thus, because an officer who unknowingly violates the Fourth Amendment cannot be deterred, the exclusionary rule does not apply to evidence obtained in "reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905.

The Second Circuit has identified several representative examples of bad faith. These include: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015). These situations can be triggered not only by "deliberate police misconduct," but also "where an officer is 'reckless" or "grossly negligent; in seeking or executing a warrant." *Id.* In the absence of indicia of bad faith, however, an officer who relies on a warrant is presumed to do so in good faith.

Here, even if the search warrant were defective—which it was not—the agents who conducted the search of the defendant's computers and electronic devices acted in good faith reliance on it.  The defendant has not alleged that Agent Weber, who applied for the warrant, misled the magistrate; that the magistrate abandoned his judicial role in considering the application; that the application lacked probable cause; or that the warrant itself was facially deficient. Rather, at best he has alleged a lack of technical specificity with particular words and phrases in the warrant. *See id. United States v. Moore*, 968 F.2d 216, 219 (2d Cir. 1992) (applying the good-faith exception to the exclusionary rule where a warrant had "technical deficiencies").  This falls far short of the showing of "deliberate police misconduct" or "gross negligence" required to overcome the good-faith exception to the exclusionary rule. Thus, even if the Court were to hold that the evidence of child pornography was obtained from the defendant's computers in violation of the Fourth Amendment, it should nonetheless refuse to exclude that evidence.

### B. THE COURT SHOULD NOT SUPPRESS THE STATEMENTS MADE BY THE DEFENDANT TO AGENTS WEBER AND LYONS

The defendant also argues that his statements to Agents Weber and Lyons should be suppressed, because he was not read his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), at the beginning of the interview.  Because the defendant was not "in custody" during the interview, however, the agents were not required to read the defendant his *Miranda* rights, and the defendant's motion to suppress should be denied.

In order to effectuate the Fifth Amendment's privilege against self-incrimination, an officer must deliver the four warnings laid out in *Miranda v. Arizona* before engaging in a "custodial interrogation" of a suspect. *Dickerson v. United States*, 530 U.S. 428, 434–35, 437–38 (2000).  An interrogation is "custodial" if "a reasonable person in the suspect's position would

have understood [himself] to be subjected to restraints comparable to those associated with a formal arrest.' " *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011) (quoting *Georgison v. Donelli,* 588 F.3d 145, 155 (2d Cir. 2009)) (original citations, quotation marks, and alterations omitted).  In making this determination, a court considers "all of the circumstances surrounding the interrogation," including: "[1] the interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station . . .); [2] whether the suspect volunteered for the interview; [3] whether the officers used *restraints*; [4] whether weapons were present and especially whether they were drawn; [5] whether officers told the suspect he was free to leave or under suspicion; and [6] the nature of the questions asked." *United States v. Simmonds,* 2016 WL 929736, at *2 (2d Cir. 2016) (internal citations and alterations omitted).  The purpose of the rule is to "temper the 'potentiality for compulsion' that exists when an individual is 'cut off from the outside world' and subjected to 'incommunicado interrogation . . . in a police-dominated atmosphere." *FNU LNU*, 653 F.3d at 154 (quoting *Miranda*, 384 U.S. at 457, 445).

Here, the circumstances surrounding the Agent Weber and Lyons' interview with the defendant demonstrate that a reasonable person would have believed that the defendant was free to leave and end the interview at any time.  The interview did not take place in a police station or other "police-dominated atmosphere," *see id*; Rather, it took place on the premises of the defendant's business, which he co-owned with one partner. *See United States v. Bassignamni*, 575 F. 3d 879 (9th Cir. 2009) (holding an interview noncustodial where "[the defendant] was interviewed at a conference room within his workplace—plainly a familiar environment."); *see also United States v. Cunningham*, 2012 WL 369923 at *4 (D. Vt. 2012) ("[C]ourts generally find that interrogation in such familiar surroundings [as the defendant's own home] is not custodial interrogation.").

Likewise, the interview took place in the showroom of the defendant's business which—far from being "cut off from the outside world"—had an unlocked entrance through which a member of the defendant's staff could have walked in at any time. *See Cunningham*, 2012 WL 369923 at * 4 (holding an interview noncustodial where the defendant "had access to the outdoors and was visible to his neighbors and his father"). Moreover, the agents did not even choose the room; Geoffrey Thorp, the co-owner of the business brought the agents and later the defendant into the showroom. *See United States v. Gaynor*, 2007 WL 1875651, at *3 (D. Conn. 2007) (holding an interview noncustodial where "[t]he [law enforcement officers] asked [the defendant] to suggest a place to talk instead of ordering him to a particular location"). The location of the interview thus suggests that the defendant was not "in custody" for *Miranda* purposes.

The defendant also participated in the interview voluntarily. Agents Weber and Lyons did not have a particular suspect in mind when they first arrived at the defendant's business, and they did not initially ask for the defendant. Only after they explained the purpose of their visit did Thorp fetch the defendant, who voluntarily entered the show room with Thorp. And once the agents identified themselves to the defendant, he told Thorpe that he "knew why they [the agents] were there" and asked Thorp to leave so that he could have some privacy with the agents. Decl. of Daniel Beal at 2. Moreover, when the agents explained that they were looking for someone who had been downloading child pornography, the defendant voluntarily "indicated to them that [he] was the one they were looking for." Decl. Para. 7. Thus, a reasonable person in the defendant's position would conclude that since he had voluntarily initiated the interview, the defendant could have ended it at any time. *See Bassignamni,* 575 F.3d at 884 ("Where we have found an interrogation non-custodial, we have emphasized that the defendant 'agreed to

accompany' officers to the police station or to an interrogation room.") (citing *United States v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004)); *Gaynor*, 2007 WL 1875651, at *3 (holding an interview noncustodial where "it appear[ed] that [the defendant] used the interview as an opportunity to appear cooperative").

The lack of any restraints or weapons used by Agents Weber and Lyons during the interview would also suggest to a reasonable person that the defendant was free to leave and could end the interview at any time.  The defendant was not placed in handcuffs or restrained in any way during the questioning.  Moreover, Agents Weber and Lyons were wearing street clothes during the interview, and no badges, guns or other indications of law enforcement authority were displayed.  These factors would indicate to a reasonable person that the defendant was free to end the interview at any time. *See Simmonds*, WL at *3 (holding that an interview was noncustodial where "[the officer] was dressed in plain clothes, his weapon was holstered and concealed by his jacket . . . and the tone of the interview was conversational in nature"); *United States v. Badmus*, 325 F.3d 133, 139 (2d Cir. 2003) (holding an interview noncustodial where "guns were not drawn at any time"); *United States v. Vado*, 87 F. Supp. 3d 472, 480 (S.D.N.Y. 2015) (same,  where the defendant "was not restrained and the agents' weapons were not drawn").

Although the interview lasted for approximately 105 minutes, it was not a "marathon session designed to force a confession." *Bassignani* 575 F.3d at 886 (holding that an interview was noncustodial despite its having run for two and a half hours).  The defendant voluntarily gave detailed answers to the agents' questions throughout the interview.  Indeed, the duration of the interview was in large part a result of the defendant's willingness to cooperate and answer questions thoroughly.

Finally, the agents conducted the interview in a conversational, non-threatening manner and never indicated that the defendant wasn't free to leave by their action or words. Under these circumstances a reasonable person would not believe that they weren't free to leave and terminate the interrogation. *Campaneria v. Reid,* 891 F.2d 1014, 1020 n.1 (2d Cir. 1989) (concluding that defendant was not in custody, in part, because "the officers had not physically or verbally indicated to (the defendant) that he was not free to leave").

Thus, the location of the interview, the defendant's voluntary participation in it, the lack of restraints or display of weapons, the conversational tone of the interview and the failure of the agents to state that the defendant was not free to leave all suggest that a reasonable person would feel that he could terminate the interview and leave and therefore was not in custody during the interview. These considerations outweigh any contrary inference that could be drawn from the interview's duration, especially since the interview was not a "marathon session designed to force a confession." *Bassignani* 575 F.3d at 886. The interview was thus noncustodial, and the agents were not required to read the defendant his *Miranda* rights before proceeding.

The defendant makes several arguments to the contrary that either misconstrue or exaggerate specific details of the interview. For example, the defendant points out that when the defendant asked whether his son was waiting for him outside, that Agent Weber offered to go check. Def.'s Mot. at 6. From this, the defendant concludes that Agents Weber and Lyons "ma[d]e clear, with no uncertainty, that [the defendant] [was] not at liberty to leave the room." *Id.* But the defendant never asked if *he* could go check to see if his son was outside—and the agents never told him he could not. Agent Weber simply offered to step out and check for him, so that the interview could continue uninterrupted and he took her up on this offer. No

reasonable person would conclude from this that the defendant was not free to leave the room or end the interview.

Likewise, the defendant points out that he asked Agents Weber and Lyons whether he could check his phone to see if his son had sent him a text message. *Id.* Agent Lyons told him that his cell phone was "part of the warrant" and that if agents were busy searching it, he would not have access to it until they were finished.  The agents said nothing to suggest, however, that the defendant could not access his phone because he was not free to leave the interview room. Indeed, they explicitly gave him a different, perfectly understandable reason for why he could not access his phone at that exact point in time.  No reasonable person would conclude from this that the defendant was not free to end the questioning.

The defendant also points out that Agents Weber and Lyons asked him if he needed to use the bathroom.  This, the defendant concludes, "clearly reflects that both they, and he, know that he cannot leave the room without their permission." *Id.* at 8.  But to a reasonable person, this would simply indicate that the officers wanted to ensure that the defendant was comfortable so that the interview could continue.  Indeed, by offering the defendant a bathroom break, the officers made clear that the defendant retained a degree of control over the interview, and could freely use the bathroom if he so chose.  A reasonable person would not conclude from this that the defendant was unfree to leave or end the interview at any time.

The defendant also argues that Agent Weber engaged in "'deceptive stratagems' during the interrogation," because at one point she indicated that she was "not familiar with [the] type of software" that the defendant had used to download child pornography, and asked him to explain how it works. *Id.* at 7.  Although it is true that Agent Weber indicated some familiarity with the Ares software in her search warrant application, it was reasonable for her to assume that the

defendant—who actually uses the software to download child pornography—would be more familiar with it than she is.  Whatever "deception" inherent in Agent Weber's invitations to explain the Ares software certainly did not reflect the overall tone of the interview, and labeling Agent Weber's comments as a "deceptive stratagem" once again mischaracterizes a single detail of the interview. *Cf. Bassignani*, 575 F.3d at 884 ("We have found a defendant in custody when the interrogator adopts an aggressive, coercive, *and* deceptive tone.") (emphasis added).  And in any case, Agent Weber's statements do not rise to the level of "deceptive stratagems" as contemplated by *Miranda* itself, which focused on tactics like "giving false legal advice." *United States v. Anderson*, 929 F.2d 96, 101 (2d Cir. 1991) (quoting Miranda, 384 U.S. at 476)).

The defendant further argues that, on several occasions, Agents Weber and Lyons "pressured [him] to continue incriminating himself." *Id.* at 8.  But the interview recording does not support this contention. For example, the defendant notes that when he "indicated that he had a lot to lose from the investigation," Agent Weber replied, "[w]e're going to try to minimize that . . . and the best way for you to do that is by working with us, which you are, I think you understand that." *Id.* Thus, far from suggesting that the defendant was not free to leave, Agent Weber made clear that the defendant could choose whether or not to continue the interview—although she felt it would be in his best interests to continue cooperating. *See Simmonds*, 2016 WL 929736, at *5 (holding an interview noncustodial even though officers "advised [the defendant] that it was in his best interest to be honest"). Likewise, the defendant points out that Agent Weber told him that she had some "uncomfortable questions" that she "had to ask" him. But as the defendant admits, Agent Weber explained that this was because "she had a job to do"—not because he was in police custody and thus unfree to leave. *Id.* at 8.

Finally, the defendant makes much of the fact that Agent Weber read the defendant his *Miranda* warnings after suggesting that they relocate the questioning to the Utica Police Department, because other agents needed to search the interview room.  The defendant argues that Agent Weber's reading of the rights "simply because there is to be a change in location . . . reflects that [the defendant] was in custody all along." *Id.*

However, the interview location was not the only thing that had changed since the beginning of the interview.  Rather, Agents Weber and Lyons had obtained a voluntary confession from the defendant, as well as specific signed and initialed images of child pornography.  Moreover, other agents had nearly completed the search of the premises, and had found several incriminating items. Thus, the critical factor in the agents' decision to arrest the defendant before changing locations was not the location change itself, but rather the evidence that the agents had amassed over the duration of the interview, which by then was sufficient to support an arrest.  Indeed, Agent Lyons made clear to the defendant after reading him his rights that although he "[was not] under arrest before," now "things have changed." Recording 1:18:00. The agents therefore read the defendant his *Miranda* rights at the appropriate stage of the investigation—when they had gathered sufficient information to support an arrest—and the defendant's statements should not be suppressed.

**CONCLUSION**

For the foregoing reasons, the Court should DENY the defendant's omnibus motion for pretrial relief, including his motion to suppress evidence of child pornography found on his computers and electronic devices, and his motion to suppress the voluntary statements that he made to Agents Weber and Lyons during their interview.


Dated: May 2, 2016                                  Respectfully submitted,

                                                    RICHARD HARTUNIAN
                                                    United States Attorney
                                                    Northern District of New York


                                      By:    */s/ Geoffrey J.L. Brown*
                                             Geoffrey J. L. Brown
                                             Assistant United States Attorney
                                             Bar Roll No. 513495

24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK


*******************************************

UNITED STATES OF AMERICA,

     v.                                                     Crim. No.:  5:16-CR-70 (BKS)

DANIEL BEAL,
                      Defendant.

*******************************************


**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2016, I electronically filed the **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** with the Clerk of the District Court using the CM/ECF system.

George Hildebrandt, Esq.


                                          */s/ Anthony P. Keach*
                                          Anthony Keach
                                          Legal Assistant